UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE SULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:10CV1014MLM |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the application for Disability Insurance Benefits under Title

II of the Social Security Act, 42 U.S.C. § 401 et seq., filed by Jackie Sullins ("Plaintiff").  Plaintiff

filed a Brief in Support of the Complaint.  Doc. 14.  Defendant filed a Brief in Support of the Answer.

Doc. 17.  The parties have consented to the jurisdiction of the undersigned United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 18.

### I.
### PROCEDURAL HISTORY

On February 23, 2006, Plaintiff filed an application for benefits.  Tr. 40.  Plaintiff's claim was

denied on June 9, 2006, and she filed a request for a hearing before an Administrative Law Judge

("ALJ").  Tr. 36, 56.  A hearing was held before an ALJ on February 29, 2008.  Tr. 7-34.  By

decision, dated March 26, 2008, the ALJ found Plaintiff not disabled.  Tr. 37-45.  The Appeals

Council denied Plaintiff's request for review.  Tr. 1.  As such, the decision of the ALJ stands as the

final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R.

§§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC").  Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence.  Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

*Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). See also *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir.

2007).   In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals

held:

> [t]he concept of substantial evidence is something less than the weight of the
> evidence and it allows for the possibility of drawing two inconsistent
> conclusions, thus it embodies a zone of choice within which the Secretary may
> decide to grant or  deny benefits without being subject to reversal on appeal.

See also *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely

because substantial evidence exists for the opposite decision.") (quoting *Johnson v. Chater*, 87 F.3d

1015, 1017 (8th Cir. 1996)); *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of

the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de

novo. *Cox*, 495 F.3d at 617; *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *McClees v.

Shalala*, 2 F.3d 301, 302 (8th Cir. 1993); *Murphy v. Sullivan*, 953 F.2d 383, 384 (8th Cir. 1992).

Instead, the district court must simply determine whether the quantity and quality of evidence is

enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v.

Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.

2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. *Benskin v. Bowen*,

830 F.2d 878, 882 (8th Cir. 1987).  See also *Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir. 1992)

(holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial

evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject

to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.  See also

4

Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226

6

F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio v. Bowen, 862 F.2d 862, 180 (8th Cir. 1988). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker

7

v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was fifty-two years old of the time of the hearing, testified that she graduated from high school; that she did not attend college or receive any vocational training; that she was a widow; that she received her husband's pension of $748 per month; and that she had not worked since February 7, 2005. Tr.11-13, 15.  Plaintiff further testified that she had pain in her stomach, acid reflux disease, arthritis in her hands, arms, knees, feet, and legs, and dumping syndrome; that she had a colectomy; that she had half of her stomach and her spleen removed in 2005; that she had a tumor on her kidney; that she had undergone multiple hernia operations; that the dumping syndrome resulted from her stomach surgery and colectomy; and that she was on thyroid medication and medication for high blood pressure and depression. Tr. 16-20, 27-29.

The ALJ found Plaintiff had the severe, medically determinable impairments of gastroparesis and recurring ventral hernias.  Tr. 42.  The ALJ further found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that Plaintiff had the RFC to lift, carry, push, or pull

8

twenty pounds occasionally and ten pounds frequently; that Plaintiff could sit six hours in an eight-hour workday and stand and/or walk a total of six hours in an eight-hour workday; that Plaintiff could frequently balance, stoop, and climb stairs or ramps; that Plaintiff could occasionally kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; and that this constituted a wide range of light work. Finally, the ALJ found that Plaintiff's RFC permitted her to perform her past relevant work as a fire lookout. As such, the ALJ found Plaintiff not disabled. Tr. 44-45.

Plaintiff alleges the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied on the state agency assessment to determine that Plaintiff did not have any mental limitations; because the ALJ disregarded evidence from Plaintiff's social worker and Henry Dralle Onken, M.D., a medical expert; because the ALJ relied on his own lay opinion to determinate Plaintiff's limitations; because the ALJ failed to develop the record in regard to Plaintiff's mental limitations; and that the ALJ's failure to develop the record resulted in prejudice to Plaintiff. Doc. 14 at 6.

A.    **State Agency Assessment**:

Plaintiff argues the ALJ improperly relied on the state agency assessment completed by M. Altomari, M.C./P.C.  Indeed, the ALJ stated that "M. Altomari, a State-agency doctor who reviewed the record in June 2006, concluded that the claimant did not have a severe mental impairment." Tr. 43.  Plaintiff argues that the ALJ did not explain the weight he gave to Dr. Altomari's statement leaving the court to speculate improperly as to the weight granted to this assessment.[1] Doc. 14 at 6.

---

[1]    The record does not indicate that M. Altomari is a doctor of any type.   Plaintiff refers to M. Altomari as a doctor and Defendant states that he is a Ph.D. Doc. 17 at 5.  As such, the court will assume that M. Altomari is a doctor of psychology although the initials this person listed next to his name do not reflect that he is a Ph.D.

Plaintiff further argues the court, therefore, "cannot determine whether the ALJ properly considered Dr. Altomari's opinion under the relevant legal standards." Doc. 14 at 6.  Additionally, Plaintiff argues that Dr. Altomari's opinion was "outdated at the time of the ALJ's decision" and that this person's assessment was not based on sufficient evidence.

A Psychiatric Review Technique Questionnaire, completed by Dr. Altomari, dated June 8, 2006, states that Plaintiff's impairment was "not severe," and that Plaintiff had a medically determinable impairment in disturbance of mood that did not satisfy the diagnostic criteria.  Tr. 218, 221.  Dr. Altomari further noted on the questionnaire that as a result of her mental disorder, Plaintiff had a "mild" restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, no repeated episodes of decompensation with respect to the "B" criteria of the listings, and that the evidence did not establish the presence of any "C" criteria. Tr. 228-29.  Dr. Altomari noted that Plaintiff's primary care provider had indicated that Plaintiff's mental status was "fully within normal limits" and that there were "no limitations" on her abilities; that despite Plaintiff's complaints of problems with stress, crying spells, memory, and concentration, she reported that she was able to live alone, take her medication without reminder, handle her finances, drive, shop without assistance, follow directions, get along with others, read, and visit her family; and that, while Plaintiff's allegations are "fully credible," her limitations are "not severe."  Tr. 230.  Indeed, Plaintiff's lack of mental health care treatment, other than the prescription of medication from doctors who were not specialists, suggests a lack of severity. See Page, 484 F.3d at 1044.  Moreover, an impairment that does not significantly affect a claimant's physical or mental activities is not severe. 20 C.F.R. § 404.1521(a).

The ALJ is not bound by the opinions of state agency medical or psychological consultants.

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  However, state agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation, and as such, the ALJ must consider their findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  In this case, Dr. Altomari is a psychologist and thus, an expert who is qualified to give an opinion in regard to Plaintiff's mental status.  "'[M]edical opinions' are defined as 'statements from physicians and psychologists or other acceptable medical sources.'" Lacroix v. Barnhart, 465 F.3d 881 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1521(a)).

In evaluating the opinion of the state agency physician, the ALJ will weigh the findings of the consultant using the relevant factors in paragraphs (a) through (e) in 20 C.F.R. § 404.1527 and § 416.927, as the ALJ would in evaluating the opinions of other medical sources.  20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  Just as with the opinions of other medical sources, the ALJ must explain the weight given to the opinions of the state agency consultant, unless a treating source's opinion is given controlling weight. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  In determining the weight to be given to the state agency consultant's opinion, the ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992)) (internal citations omitted).  The ALJ in the matter under consideration did so as he noted that Dr. Altomari reviewed the record and concluded that Plaintiff did not have a severe mental impairment.

To the extent Plaintiff argues that Dr. Altomari's opinion is outdated, an ALJ cannot make an RFC assessment based on outdated medical records. Frankl v. Shalala, 47 F.3d 935, 937-38 (8th Cir. 1995).  In Plaintiff's case, however, she alleges that she became disabled in February 2005; Dr. Altomari completed the questionnaire in June 2006; the hearing before the ALJ was held in February

2008; and the ALJ's decision is dated March 2009.  As such, Dr. Altomari's report covers a relevant time period.  To the extent Plaintiff argues the court cannot speculate as to the weight given to Dr. Altomari's opinion by the ALJ, the court need not speculate as to the weight the ALJ gave to Dr. Altomari's opinion upon determining that Plaintiff's depression was not severe.  The ALJ's decision makes it clear that he did not give great weight to Dr. Altomari's opinion although he considered it in the context of other opinions of record, including the opinion of Anne Broadway, M.D., who was Plaintiff's treating physician as early as June 2005.

To the extent Plaintiff argues that Dr. Altomari's report consisted of only checked boxes without "significant further discussion," Dr. Altomari explained the basis for his opinion in the "consultant's notes." Tr. 230. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (providing that degree to which a nonexamining source provides support for his or her conclusions will affect the weight given to that opinion).

Upon determining that Plaintiff's depression was not severe, the ALJ considered the opinion of Dr. Broadway and noted that "the only extensive evaluation of [Plaintiff's] mental status of record, [was] conducted in April 2006 by [Dr. Broadway]" and that this evaluation had "entirely normal" results. Tr. 43.  The ALJ further considered that Dr. Broadway noted that Plaintiff's "antidepressant medication had been effective."  Tr. 43.  Conditions which can be controlled by treatment are not disabling. See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d at 384; Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James for James, 870 F.2d 448, 450 (8th Cir. 1989). Further, as considered by the ALJ, Dr. Broadway opined that Plaintiff did not have any work-related

12

restrictions due to depression. The opinion of Dr. Broadway, as Plaintiff's treating physician, is entitled to "'controlling weight'" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)).  Significantly, Dr. Broadway reported, on April 2, 2006, that Plaintiff had been treated for depression; that Zoloft helped her condition; and that she had no "work-related limitation in function due to a mental condition." Tr. 217.  Although Plaintiff contends that Dr. Broadway's opinion was too old to be considered by the ALJ, Plaintiff alleged that she became disabled on February 7, 2005.  Dr. Broadway's opinion is dated April 2006, and the ALJ's decision is dated March 2008.  Not only was Dr. Broadway's opinion rendered during the relevant period, it was rendered in the middle of the period during which Plaintiff claims she was disabled.  Although Plaintiff also argues that Dr. Broadway was not a specialist in psychiatry, the record does not reflect that Plaintiff was treated by a psychiatrist.  In any case, Dr. Broadway's specialty does not preclude her from rendering a medical opinion regarding Plaintiff's depression, even though her opinion would be given greater weight if she were a specialist. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). See also 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).  Moreover, Dr. Altomari, who is a specialist, reviewed Dr. Broadway's report and indicated that Plaintiff's mental status was within normal limits, upon reaching his conclusions regarding Plaintiff's mental limitations.

Also, upon finding that Plaintiff's depression was not severe, the ALJ considered a September 2006 report from Midland Professional Associates, a treating source, which showed that

antidepressant medication had been effective for Plaintiff. See Medhaug, 578 F.3d at 813; Schultz, 479 F.3d at 983.  Records of this date state that Plaintiff had been "on Zoloft for years [] and it's been effective for her." Tr. 260.  Significantly, when Plaintiff was seen on this date and other dates at Midland Professional Associates, she did not present for reasons related to a mental impairment, but rather for physical conditions such as complaints of cough, URI symptoms, red eyes, and bilateral conjunctivitis. See Tr. 259-64.

Upon determining that Plaintiff's depression was not severe, the ALJ considered that S. Galvez, M.D., a treating doctor, in a November 2007 report, did "not associate any deficits or abnormalities with [Plaintiff's] depression, save insomnia." Tr. 43.  Dr. Galvez did report on November 20, 2007, that Plaintiff presented the prior week with complaints of insomnia; that she reported that since then she had no problem falling asleep; and that she reported that she woke up early in the morning and was unable to sleep; and that she reported that at noontime she became sleepy and tired.  Dr. Galvez did state that Plaintiff's insomnia "may [] be related to her depression." Dr. Galvez further reported that he would increase Plaintiff's depression medication, at bedtime, to see if it helped her insomnia.[2] Tr. 269.  Significantly, Dr. Galvez also reported on November 20, 2007, that Plaintiff was "alert and responsive to questions." Tr. 269.  To the extent that the ALJ erred in regard to his stating that Dr. Galvez did not relate Plaintiff's insomnia to depression, such an error does not require a finding that the ALJ's decision is not supported by substantial evidence. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the

---

[2]     Plaintiff incorrectly states that the ALJ did not consider Dr. Galvez's discussion of her insomnia.

14

deficiency had no practical effect on the outcome of the case."). In any case, Dr. Galvez's assessment on November 20, 2007, was simply "insomnia." Despite his stating that Plaintiff had depression for many years, insomnia was the only symptom which Dr. Galvez mentioned. Further, to the extent Plaintiff had insomnia, whether or not it was caused by her depression, the record does not indicate that this condition existed for a twelve month period. In any case, Dr. Galvez did not suggest that Plaintiff's insomnia was disabling. Moreover, although Plaintiff had depression for years, she worked at the Clemson Diagnostic Center until February 2005. Tr. 13. When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years.").

Upon considering that Plaintiff's depression was not severe the ALJ further considered the testimony of Dr. Onken, who appeared as a medical expert at the hearing. The ALJ considered that Dr. Onken testified that Plaintiff met the listing for depression, 12.04 of 20 C.F.R. pt. 404, subpt. P, app. 1.[3] The ALJ, however, gave "virtually no weight" to Dr. Onken's opinion for several reasons. First, as noted by the ALJ, the medical record did not show the required criteria. In this regard the ALJ considered that Plaintiff had no episodes of decompensation, no restriction of activities of daily

---

[3]        20 C.F.R. ch. lll, pt. 404, subpt. P, app.1 § 12.00(a) states, in relevant part, that:

The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

living, no difficulties maintaining social functioning, and no more than mild difficulties maintaining concentration, persistence, and pace. See 20 C.F.R. § 404.1520a(c)(2)-(3) (requiring that the ALJ rate the degree of functional loss resulting from the impairment in the four areas of function which are deemed essential to work, activities of daily living, social functioning,  concentration, persistence, or pace; and deterioration or decompensation in work or work-like settings). The court finds that the ALJ's discounting Dr. Onken's opinion because it was inconsistent with the medical records is supported by substantial evidence and that it is consistent with the Regulations and case law.

Second, ALJ discredited Dr. Onken's opinion because he testified that his opinion was "[m]ainly" based on a report of Cynthia Mayberry, a nurse practitioner. Tr. 43, 31.  Dr. Onken testified that he relied on Nurse Mayberry reporting that Plaintiff had "major depression," which came back two years prior to the hearing; that the highest GAF Plaintiff ever had in the past year was 53 [4]; that Plaintiff had difficulty understanding and remembering; that she could "do simple instructions but [was] limited on more complicated instructions"; and that she had "trouble keeping within a schedule or maintaining attention." Tr. 31.  As noted by the ALJ, Nurse Mayberry is not an acceptable medical source for establishing the nature and severity of an impairment. See Lacroix, 465 F.3d at 886 (citing 20 C.F.R. §§ 404.1513(a), 416.913(a); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005)).  Additionally, the ALJ considered that, even if Nurse Mayberry were an acceptable

---

[4]        Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.  See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represent "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild,"  and scores of 90 or higher represent absent or minimal symptoms of impairment.  Id. at 32.

medical source her opinion could not reasonably be adopted because it was internally inconsistent. See Dodson v. Chater, 101 F.3d 533, 535 (8th Cir. 1996) (holding that where a doctor's completion of a form was ambiguous and contradicted itself, "it was permissible for the ALJ to conclude that [the claimant] remained able to work").  In this regard, the ALJ found that, "the whole of her reasoning was that [Plaintiff] becomes emotionally overwhelmed and has panic attacks when amongst more than one or two persons; yet, she concluded that [Plaintiff] had no limitation in social functioning." Tr. 43. Indeed, Nurse Mayberry reported that Plaintiff had *no limitations* in all categories of "Social Interaction," including the ability to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. Tr. 255.  Nurse Mayberry, moreover, reported that Plaintiff was *not significantly limited* in regard to remembering locations and work-like procedures, understanding and remembering very short simple instructions, making simple work-related decisions, and being aware of normal hazards and taking appropriate precautions. Tr. 254-55.  Additionally, the court notes that the record does not support the extremity of Nurse Mayberry's suggested limitations.  While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). See also Gonzalez v. Barnhart, 465 F.3d 890, 895-96 (8th Cir. 2006) (holding that an ALJ may properly discount  subjective complaints if inconsistencies exist in the

17

record as a whole).  As such, the court finds that the ALJ's discounting the opinion of Dr. Onken

because Dr. Onken relied on the testimony of Nurse Mayberry is based on substantial evidence and

is consistent with the Regulations and case law.

In conclusion, the court finds that substantial evidence supports the ALJ's finding that Plaintiff

did not suffer from a severe impairment due to her depression.

**B.     Plaintiff's RFC:**

The ALJ found that Plaintiff had the RFC to:

lift, carry, push or pull twenty pounds occasionally and ten pounds frequently, sit six
hours in an eight-hour day, stand and/or walk a total of six hours in an eight-hour day,
frequently balance, stoop and climb stairs or ramps, and occasionally kneel, crouch,
crawl and climb ladders, ropes or scaffolds.

Tr. 44.

The ALJ further found that this "constitutes a wide range of light work."[5] Tr. 44.  Plaintiff

contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ

improperly relied on Dr. Altomari's opinion, because the ALJ disregarded evidence from Nurse

Mayberry and Dr. Onken, and because the ALJ relied on his own lay opinion.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or

mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in

substantial employment, an ALJ must consider the combination of the claimant's mental and physical

impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  "The ALJ must assess a claimant's

---

[5]     The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at
a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).
Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a
workday, the full range of light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6.

RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true ex tent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments.  Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)).

The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id.  See also Eichelberger, 390 F.3d at 591.  The ALJ in the matter under consideration first considered the evidence of record from medical professionals, including records from Plaintiff's treating source doctors, Dr. Broadway and Dr. Galvez, and the opinions of Dr. Onken and Dr. Altomari regarding Plaintiff's depression.  Additionally, the ALJ considered a report from T. Williamson, M.D.,  who saw Plaintiff for indications of dysphagia and who studied Plaintiff's gastrointestinal system via an esophagogastroduodenoscopy.  Dr. Williamson reported that Plaintiff had *mild* gastroparesis; that "nothing really seemed to account for" dysphagia; that it might be "mild esophageal spasm"; and that he did not think a further workup was necessary. Tr. 184.  The ALJ considered that records showed

19

that Plaintiff had been experiencing ventral hernias on a recurring basis; that reports from Midland Professional Associates showed that she had no abdominal tenderness despite hernia; that on once occasion, in January 2007, Plaintiff had a mesh repair; and that a post-surgical report showed that there was no evidence of hernia defect. Tr. 44, 257-64.  The court notes that on February 20, 2007, John G. Adams, M.D., reported that, "status post repair, recurrent abdominal incisional hernia," Plaintiff said she was tolerating a regular diet; that she was sore "but ... improving"; that there was no evidence of the hernia defect; that "[o]verall [Plaintiff] appear[ed] to be doing well"; and that she was to be seen on an as needed basis. Tr. 241.

The ALJ also considered that Dr. Galvez reported, in mid-2007, that Plaintiff complained of abdominal pain and that Dr. Galvez "suspected she had abdominal wall strain, as opposed to a recurrence of hernia." Tr. 44.  The ALJ further considered that Dr. Galvez's suspicion was "borne out by objective study" and that Dr. Galvez subsequent records did not mention the results. Tr. 44. Records reflect that, on June 19, 2007, Dr. Galvez reported that Plaintiff said pain in her abdomen started when she was lifting; that it was "only triggered with lifting"; that the "[r]ange of motion of the back [was] unremarkable"; that there were no areas of tenderness; that "[o]n bending and straining," he "did not feel any definitive hernias"; and that Plaintiff was scheduled for a CT scan of the abdomen. Tr. 267.  Subsequently, on November 6, 2007, Dr. Galvez reported that Plaintiff's abdomen was soft; that her extremities were without any dependent edema; that she was neurologically intact; that superficial and deep tendon reflexes were intact; that his assessment was "probable restless leg syndrome"; that Plaintiff would be placed on Requip; and that Plaintiff was using Maalox. Tr. 268.  Records of this date do not mention the results of Plaintiff's CT scan.  As discussed above, Dr. Galvez reported, on November 20, 2007, that his assessment was insomnia.  Dr.

20

Galvez also reported on this date that Plaintiff's veins were not distended; that her chest was clear; and that her heart had normal sinus rhythm. Tr. 269.

Also, upon determining Plaintiff's RFC, the ALJ also considered Plaintiff's credibility. In particular, the ALJ found that Plaintiff's activities of daily living, including shopping, were inconsistent with her assertion that she was unable to walk more than a half block at a time or stand more than fifteen to twenty minutes at a time. The ALJ noted that Plaintiff's shopping indicated an ability to lift grocery bags, "which are generally of considerable weight." Tr. 44. As stated above, a claimant's daily activities can be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590; Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805. The ALJ also considered that although Plaintiff said she had been experiencing hernias since 2002, she was nonetheless able to engage in substantial gainful activity in 2002, 2003, and 2004.Tr. 45. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)).

Only after considering all the medical evidence of record did the ALJ find that Plaintiff did not have a listed impairment or combination of impairments that met a listing. As discussed above, the ALJ did not rely on his own lay opinion but rather relied on the opinions of record. Upon reaching his conclusions, the ALJ properly weighed the evidence. See Benskin, 830 F.2d at 882; Onstead, 962 F.2d at 804. The court has found above that the ALJ's determination that Plaintiff's depression was not severe is supported by substantial evidence. The court further finds that the ALJ's consideration

of all medical evidence of record is supported by substantial evidence.  Further, only after considering the severity of Plaintiff's alleged impairments and the limitations which he found credible, did the ALJ determine Plaintiff's RFC. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2009); Lauer, 245 F.3d at 703.  In conclusion, the court finds that the ALJ's RFC determination is consistent with his findings regarding the medical evidence and Plaintiff's credibility, and that it is based on substantial evidence on the record.   Moreover, the ALJ's determination of Plaintiff's RFC is precise  as it directly addresses her restrictions and the requirements of light work. See McKinney, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson, 51 F.3d at 779.  Only after determining Plaintiff's RFC and after considering the requirements of Plaintiff's past relevant work as a fire lookout, did the ALJ find that Plaintiff's RFC did not prevent her from performing her past relevant work and that, therefore, she was not disabled.[6]

## C.    The ALJ Properly Developed the Record

Plaintiff contends the ALJ did not sufficiently develop the record regarding her mental impairments and that she was, therefore, prejudiced.  Doc. 14.

A claimant for Social Security Disability benefits has the responsibility to provide medical evidence demonstrating a severe impairment and how the impairment affects her functioning.  20 C.F.R. § 404.1512(c).  Nevertheless, the ALJ must develop a complete medical history for the claimant for at least the twelve months preceding the month in which the claimant's application was

---

[6]     The ALJ properly cited the Dictionary of Occupational Titles for determining the requirements of Plaintiff's past relevant work. See 20 C.F.R. § 404.1560(b).  The court notes that Plaintiff also testified regarding these requirements. Tr. 13-15.

filed before making a determination.  20 C.F.R. § 404.1512(d).  "Complete medical history" refers to the records of all claimant's medical sources covering at least the twelve months prior to the date on which claimant's application was filed.  20 C.F.R. § 404.1512(d)(2).  If the evidence before the ALJ is consistent, but he does not have sufficient evidence to determine whether the claimant is disabled, or if after weighing inconsistent evidence that ALJ cannot decide whether the claimant is disabled, the ALJ should attempt to obtain additional evidence.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  The ALJ may request additional existing records, recontact the claimant's medical sources, order a consultive examination, or ask others for more information in order to develop a complete record.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).   A claimant, however, bears the burden of proving the ALJ failed to adequately develop the record and this failure resulted in prejudice.  See Onstad, 999 F.2d1232, 1234 (8th Cir. 1993); Combs v. Astrue, 243 Fed. Appx. 200, 204 (8th Cir. 2007).  The duty to develop the record is enhanced when a claimant is not represented by counsel. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).  Significantly, Plaintiff in the matter under consideration was represented by counsel.

There no "bright line test" for determining when the ALJ has failed to develop the record; the determination must be made "on a case by case basis." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (quoting Lashley v. Sec'y of Health & Human Servs., 707 F.2d 1048, 1052 (6th Cir. 1983)).  An ALJ need not develop a record further where it is sufficient so that a just determination of disability may be made. Landess v. Weinberger, 490 F.2d 1187, 1189 (8th Cir. 1974).  The duty to develop the record is further only arises where "a crucial issue is undeveloped." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). "'[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 488 (8th

Cir.1995)) (alteration in original).

In the present case, the record was sufficiently developed in order for the ALJ to make a disability determination. The fact that Plaintiff's counsel did not submit additional records, such as records from Nurse Mayberry, "suggests that these alleged [documents] have only minor importance." Shannon, 54 F.3d at 488 (citing Onstad, 999 F.2d at 1234). Further, Plaintiff does not suggest specifically what additional records would establish. See Shannon, 54 F.3d at 488 (holding that the plaintiff failed to show prejudice because he failed to show how evidence of other alleged medical visits would be dispositive for purposes of his claim). To the extent Plaintiff contends that the ALJ should have recontacted Nurse Mayberry, as discussed above, she is not an acceptable medical source; her opinion was internally inconsistent; and her opinion is contradictory to the other evidence on the record. Samons v. Astrue, 497 F.3d 813, 819 (8th Cir. 2007) (holding that an ALJ does not have to recontact a treating physician if he has determined that the physician's opinion is "inherently contradictory or unreliable") (quoting Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006)). Significantly, Plaintiff could have submitted additional evidence to the Appeals Council and, despite the ALJ's having issued his decision over three years ago, Plaintiff has not provided additional evidence to further develop the record. See Weber v. Barnhart, 348 F.3d 723, 725-26 (8th Cir. 2003) ("[The plaintiff] certainly could have obtained these records during the appellate process and demonstrated that they were such that a remand to the ALJ was necessary. She has not done so."). Thus, even though Plaintiff suggests that she did not provide additional evidence because the ALJ suggested he would find her disabled, once the ALJ's decision issued, she could have submitted additional evidence to the Appeals Council. Plaintiff, therefore, was not prejudiced by any alleged suggestion by the ALJ that he would find in her favor.

To the extent Plaintiff contends that the ALJ should have obtained a consultative examination, an ALJ "may" order a consultative examination when the record does not provide sufficient medical evidence to make a disability determination. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).  As found above, the ALJ had sufficient evidence to make a determination regarding Plaintiff's claim. Significantly, Plaintiff's own treating physician, Dr. Broadway, opined Plaintiff did not have a severe impairment due to her depression. This opinion is supported by the records of Dr. Galvez and the conclusions of state agency medical consultant, Dr. Altomari.  Tr. 43.  As such, the court finds that the ALJ did not err by failing to recontact Plaintiff's medical sources or by failing to order a consultative examination.  The court finds, therefore, that the ALJ"s decision is supported by substantial evidence.

**IV.**
**CONCLUSION**

The court finds that the decision of the ALJ is supported by substantial evidence on the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.


**ACCORDINGLY,**


**IT IS HEREBY ORDERED** that the relief sought by Plaintiff Jackie Sullins in her Complaint and Brief in Support of Complaint is **DENIED;** Docs. 1, 14


**IT IS FURTHER ORDERED** that a separate Judgement shall be entered this same date incorporating this Memorandum Opinion.

25

/s/Mary Ann L. Medler

MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of September, 2011.